UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DARRYL B. WATSON, SR.,                                                                Plaintiff,

v.                                                                   Civil Action No. 3:17-cv-532-DJH-CHL

DONNA HARGENS et al.,                                                              Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Darryl B. Watson resigned from his teaching position with Jefferson County Public Schools following a series of disciplinary proceedings. After his resignation, Watson filed charges with the EEOC, alleging that he was discriminated against because he is African American. The EEOC dismissed his claims, and Watson sued four of his former superiors and JCPS administrators in their individual capacities, alleging violations of Title VII, 42 U.S.C. § 2000e *et seq.*, for race, sex, and disability discrimination. (Docket No. 1) Defendants now move the Court to dismiss Watson's claims. (D.N. 11) For the reasons below, the Court will grant the motion to dismiss.

**I.**

The following facts are set forth in the complaint and taken as true for purposes of the present motion. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). JCPS hired Watson as an Exceptional Child Education/Behavior Disorder instructor in October 2010. (D.N. 1, PageID # 4) He worked at Myers Middle School until it closed. After the closure, Watson taught at Waggener High School, where the displaced Myers students were temporarily housed. (*Id.*) While at Waggener in 2014, Watson observed other teachers treating African American students inappropriately—for example, he witnessed assistant principal Jeffery Marshall physically restrain

1

a student with a maneuver prohibited by JCPS guidelines. (*Id.*, PageID # 4) Watson claims that Donna Hargens, the former superintendent of JCPS, treated him unfairly because she did not investigate the allegations against Marshall, "despite [the allegations] being brought to her attention." (*Id.*, PageID # 17) Watson reported these incidents to the administration, but no disciplinary action was taken against the Caucasian teachers. In July 2015, Watson spoke with Waggener principal Katy Zeitz about applying for a position as an assistant principal. (*Id.*, PageID # 7) Zeitz stated that she "did not want three males as Assistant Principals," and she did not interview Watson for the position. (*Id.*) On September 2, 2015, Watson responded to a student threatening to "blow [his] his brains out" by placing his hand on the student's shoulder. (Id., PageID # 10) The administration determined that the interaction qualified as excessive force and Zeitz suspended Watson for five days. (*Id.*)

According to Watson, he then began experiencing a hostile work environment. He claims that he was demoted for reporting the mistreatment of students and was disciplined more harshly than other teachers because he is not Caucasian. (*Id.*, PageID # 17) Watson collected data on the "high ratio of African American suspension rates at Myers at [sic] Waggener compared to other schools in the district" and claims that the "data was hidden from the district" and ignored by Zeitz. (*Id.*, PageID # 5) Further, Watson claims that he attempted to shed light on a fraudulent attempt to "chang[e] . . . the grading policy to where no student received a below a C minus despite if they were failing." (*Id.*, PageID # 4) He claims that he experienced "continued excessive discipline, had [his] performance defamed as an educator and [was] wrongfully demoted" because of his attempts to expose these policies, and that this "target on his back" created a hostile work environment. (*Id.*, PageID # 5) As "retaliation" for exposing this inappropriate behavior, Watson was transferred from Waggener to Okolona Elementary School. (*Id.*, PageID # 19) Watson claims

that Tiffeny Armour, the former director of human resources for JCPS, discriminated against him when she instituted this transfer. (*Id.*)

At Okolona, Watson supervised a much larger class and received little administrative support. (*Id.*, PageID #15) Watson was unhappy at his new placement and asked for a transfer. (*Id.*, PageID # 23) He clashed with human resources officers, other teachers, and administrators. (*Id.*, PageID # 21–24) Watson asserts that the principal of Okolona, Karen Stearman, ignored his complaints about his coworkers and did not make any changes to provide Watson with additional administrative support. (*Id.*, PageID # 23) On August 22, 2016, administrators reported that Watson had inappropriately sprayed a student with a water bottle. (*Id.*, PageID # 22) Following a disciplinary inquiry, Watson was assigned to supervise the bus compound, a change Watson views as a demotion. (*Id.*, PageID # 28) He was "forced" to resign after experiencing "[e]xacerbation of PTSD symptoms," for which he reports receiving medical care. (*Id.*, PageID # 17–18) Watson filed two complaints of racial discrimination with the EEOC. (D.N. 11-2, 1 1-3) The EEOC determined that there was not probable cause for the claims, and Watson was issued right-to-sue letters. (*Id.*)

Watson filed this action against Armour, Hargens, Stearman, and Zeitz on August 30, 2017. (D.N. 1) He asserts claims under Title VII, Kentucky's defamation statute, and the Kentucky Whistleblower Act.[1] Defendants moved to dismiss (D.N. 11), but the case was stayed, at Watson's request, due to his alleged medical conditions. (*See* D.N. 21) Watson has since responded (D.N. 24), and Defendants replied. (D.N. 25) After consideration of the parties' arguments, the Court will grant Defendants' motion to dismiss.

---

[1]Watson checked the box for a § 1983 claim on his pro se complaint. (D.N. 1) The Court, however, previously determined that Watson did not allege a particular constitutional violation and that he has only alleged claims under Title VII and state law. (D.N. 5, PageID # 56)

3

## II.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

## III.

**A.     Title VII**

Title VII allows individuals who have been discriminated against by their employers to recover monetary damages. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999). For purposes of Title VII, an employer is defined as "[a] person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C.A § 2000e(b). Therefore, "individual employees cannot be held liable under Title VII." *Galey v. May Dep't Stores Co.*, 9 F. App'x 295, 299 (6th Cir. 2001); *see also Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir. 1997). Title VII thus does not allow aggrieved employees to recover from individual superiors or coworkers. Watson's

argument to the contrary relies on cases where individual defendants were charged with assault and is therefore meritless.[2]

As noted by Defendants, Watson did not name JCPS as a defendant in his complaint. (D.N. 11, PageID # 86; D.N. 1)  All Defendants are former JCPS employees themselves, and Watson has not alleged that any of them qualifies as an "employer" for purposes of Title VII.  Because Title VII imposes liability only on "employers" and "[n]one of the facts, even liberally construed, suggest" that the defendants named here "are 'employers' as contemplated under Title VII," Watson's claims must be dismissed as a matter of law.  *Turner v. Brown Bro's Cadillac Inc.*, No. 3:16CV-194-CRS, 2016 WL 4535668, at *2 (W.D. Ky. Aug. 30, 2016) (dismissing Title VII claims against individual defendant).

**B.    Defamation**

"Under Kentucky law, defamation consists of four elements: (1) a defamatory statement; (2) about the plaintiff; (3) that is published; and (4) that causes injury to reputation."  *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)).  Watson alleges that he was "defamed as an educator."  (D.N. 1, PageID # 5)  His complaint contains no other detail or explanation of the alleged defamation.  Watson failed to provide the Court with a date on which the alleged defamation occurred.  Watson's defamation allegation therefore amounts to merely a "naked assertion[] devoid of further factual enhancement'—precisely the level of pleading that *Iqbal* squarely rejected."

---

[2] The Court notes that Watson's response on the individual-liability argument appears to be copied directly from the website of a law firm, without citation or modification.  (D.N. 24, PageID 263; https://www.fisherphillips.com/resources-articles-harassment-claims-highlight-risk-for-individual-liability)

*Shaughnessy v. Interpublic Grp. of Cos., Inc.*, 506 F. App'x 369, 373 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. 662 at 677–78). Watson's defamation claim will therefore be dismissed.

C. **Kentucky Whistleblower Act**

Ky. Rev. Stat. § 61.102, also known as the Kentucky Whistleblower Act, prohibits employers from punishing employees for good faith reporting of suspected violations of law. Regardless of the merits of Watson's whistleblower claim, "the language of KRS 61.101(2) does not impose individual civil liability under Kentucky's Whistleblower Act for reprisal against public employees of the Commonwealth and its political subdivisions." *Pacheco v. Waldrop*, 72 F. Supp. 3d 738, 749 (W.D. Ky. 2014), on reconsideration in part, 84 F. Supp. 3d 606 (W.D. Ky. 2015) (quoting *Cabinet for Families & Children v. Cummings*, 163 S.W.3d 425, 431–434 (Ky. 2005)); *see also Miller v. Admin. Office of Courts*, 448 F.3d 887, 897 (6th Cir. 2006) (upholding dismissal of KWA claims against individual defendants because "the Act does not impose individual civil liability"). Watson's claims against Defendants—all named in their individual capacities—therefore fail as a matter of law.

IV.

Watson cannot recover from the individually named Defendants under Title VII. He failed to make the minimum factual allegations to support a defamation claim, and his Kentucky Whistleblower Act claims suffer from the same infirmity as his Title VII claims. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendants' motion to dismiss (D.N. 11) is **GRANTED**. Watson's claims are **DISMISSED** with prejudice and **STRICKEN** from the Court's docket.

May 29, 2020

**David J. Hale, Judge**
**United States District Court**